Filed 8/20/21  In re Carlos L. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re CARLOS L. et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JUAN L., Defendant and Appellant. | B309529 (Los Angeles County Super. Ct. No. 19CCJP02618C,D,F,G) |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

Juan L. (the father) challenges jurisdictional and dispositional orders involving four children. The father had multiple instances of inappropriate physical discipline against the children. The father blamed the children and asserted he would do the same thing again. We affirm. Statutory citations are to the Welfare and Institutions Code.

## I

The father has four children involved in this case: Ashley L. (born April 2003), Jennifer L. (born July 2005), Carlos L. (born July 2009), and David L. (born March 2013).

In April 2016, a family law order gave the father legal and primary physical custody of Ashley and gave the children's mother legal and primary physical custody of Jennifer, Carlos, and David. When the Department became involved in the present case, Carlos and David lived with the mother. As of March 2019, Ashley and Jennifer lived with their paternal grandparents and aunt.

On March 21, 2019, the Department received a referral alleging the mother punched nine-year-old Carlos's face. The mother denied punching Carlos but admitted spanking him and slapping his face.

On April 25, 2019, the Department filed a section 300 petition on behalf of the four children and a fifth child who has a different father. The petition alleged the children were in danger due to the mother's physical abuse and the father's failure to protect the children from abuse.

2

At a detention hearing on April 26, 2019, the juvenile court found a prima facie case section 300 described the children, released the children to the parents, and ordered the parents not to use corporal punishment.

The father said he did not physically discipline the children. Ashley and the paternal grandmother corroborated the father's account but Jennifer said the father hit her. The most recent incident had been about a month earlier.

The Department recommended the court sustain the petition and terminate jurisdiction over Ashley and Jennifer with a custody order granting primary physical custody to the father and joint legal custody.

On June 6, 2019, the court sustained amended counts under section 300, subdivisions (b)(1) and (j) based on the mother's physical discipline and the father's failure to protect the children. The mother pleaded no contest and the court accepted the plea.

The court declared the children to be dependents of the court. It ordered Ashley and Jennifer to be placed with the father, with the understanding they resided with their paternal aunt, and terminated jurisdiction over them. It ordered David and Carlos to be placed with the mother. The court ordered family maintenance services. It reiterated the order against corporal punishment and said, "No hitting the children."

On February 18, 2020, the Department received a referral alleging the father physically abused Jennifer. The Department found the allegations inconclusive.

On May 12, 2020, the father used physical force against Carlos at the mother's house. Carlos, the father, the mother, and

Ashley were in the house at the time.  There are varying accounts of this event.

The family's in-home outreach counselor learned about the incident when she stopped by the house and saw Carlos crying. The mother said Carlos was crying because the father took Carlos's cell phone.  Carlos told the counselor the father had punched his face twice and had choked him.

The person who reported the event said the father punched Carlos's face two times, pinned Carlos to a bed, and choked him. The reporter said Carlos's right cheek was red, his upper lip was swollen, his neck had light red marks, and he complained of pain.

The day of the incident, a department social worker interviewed Carlos, who was hesitant to talk.  Carlos said the father slapped his face once and pushed his neck and chest.  The social worker did not observe marks on Carlos.  The next day, a different Department social worker observed a dime-sized faded purple bruise and slight swelling on Carlos's upper lip.  A nurse practitioner also examined Carlos and said he had bruising and small lacerations on his lip.  Carlos told the nurse the father hit him twice with the back of the hand and pushed him on the chest and onto a bed.  Carlos told the nurse this was the first time his dad had hit him.

The father admitted he "got" Carlos by the shoulders, held Carlos on the bed, and hit Carlos's mouth twice with the back of his hand.  The father said he had never done this before.

The father insisted his actions were discipline, not abuse. Carlos had not been doing his schoolwork, the father confronted Carlos about it, and Carlos sent the father disrespectful text messages.  The father came to the mother's home and told Carlos to tell the father to his face what Carlos had texted.  The father

threatened to take Carlos's cell phone. Carlos said he would kill the father when he grew up.

The day after the incident, the father said kids who do not get disciplined "become killers and gang members." He repeated this belief about a week after the incident. He also said, "The Department is not going to tell me how to raise my kids. The Law is not going to tell me how to raise my kids." If this situation recurred, the father said, "I'd do it again." The father told Carlos, "Look at the problem that you've caused." The father wanted Carlos to apologize to him.

In October 2020, the father discussed the event again and said, "I am not going to let him talk to me that way. They become killers and gangster[s] and then they say where is the dad." The father did not say whether he thought his own reaction was appropriate or whether he would react differently in the future.

The mother offered a similar account as the father after the event. In September 2020, she gave more details. The father hit Carlos once, she told the father to stop, the father said, "I don't care I am his father and he isn't going to disrespect me," and the father hit Carlos a second time. Carlos began bleeding and the mother helped Carlos rinse his mouth.

Ashley said the father screamed at Carlos but she did not see the father slap, hit, or choke Carlos. The father was not physical with her or her siblings. In a later interview about this event, she said Carlos had driven the father to slap him.

On June 15, 2020, the court authorized the Department to detain the children from the parents.

On June 18, 2020, Jennifer said the father "only" hit her when he was "really mad." She and the father once physically

5

fought. She got a knife and said she would cut her leg so she could leave the house.

Jennifer discussed this event again in an interview in September 2020. The father would not let her leave the house. He pushed her and she fell. She went to the bathroom to text her cousin to say she wanted to leave. The father tried to take the phone and pulled Jennifer into the bathtub by her hair. She hit the father and the father hit her back. She got a knife and was going to cut her leg because she wanted to leave. The father pulled her hair and pushed her into a counter.

Jennifer recounted another incident a year earlier in which the father kicked Jennifer in the stomach, dragged her, and hit her. This caused bruises.

Regarding the incident where Jennifer wanted to leave, the father said Jennifer was in a bad mood and had been yelling. He denied going into the bathroom with her. He said Jennifer had pushed the paternal grandmother and aunt. He admitted stopping Jennifer from leaving and pulling her hair because she opened a drawer to get a knife. He pulled Jennifer's hair and told her to calm down.

When the father learned the Department had a warrant to remove the children, he tried to pick up Jennifer to run away and texted her to tell her to run away, but Jennifer stayed in the home.

The Department filed a section 342 petition for Carlos and David and a section 300 petition for Ashley and Jennifer. Both petitions alleged the father's physical abuse of Carlos and Jennifer endangered the children and the mother failed to protect them.

On June 26, 2020, the juvenile court ordered Carlos and David detained from the father but not the mother. It granted the father monitored visitation with Carlos and David. The court did not detain Ashley and Jennifer from either parent and ordered them to live with the mother.

In October 2020, the family's in-home outreach counselor said the mother had been cooperative with Department services and had turned things around after the court returned the children to her in June 2020.

The court held an adjudication hearing on the section 300 and section 342 petitions on November 17, 2020.

The father asked the court to dismiss the petitions entirely for lack of evidence of physical abuse. He said Jennifer exaggerated the incident. The incidents with Carlos and Jennifer were one-time incidents where the father was responding to the children's extreme behaviors.

The court interpreted the father's conduct as a course of conduct in which he used physical discipline when the children were disrespectful or failed to follow the father's orders. The father's discipline was inappropriate and the father had said he would do it again.

The court sustained amended counts under section 300, subdivisions (b)(1) and (j) in both petitions based on the father's inappropriate discipline.

As to disposition, the Department and counsel for the children requested the court continue to place the children with the mother and detain them from the father. The father asked the court to return the children to his care.

The court did not think a safety plan would be sufficient to prevent another incident. The father had not completed services and he said he would use the same discipline again.

The court removed the children from the father, ordered placement with the mother, and granted the father unmonitored visits with Ashley and Jennifer. The written order incorrectly says the court ordered *monitored* visits with Ashley and Jennifer. The court granted monitored visits with Carlos and David and gave the Department discretion to liberalize these visits.

The father appealed the November 2020 jurisdiction and disposition findings and orders.

## II

We begin by addressing two justiciability issues.

The first issue involves Ashley, who turned 18 during this appeal. On March 15, 2021, after the father filed his opening brief, the juvenile court terminated jurisdiction over Ashley. On the Department's motion, we granted judicial notice of this order. The Department contends orders the father challenges are moot as to Ashley. The father acknowledged the court's termination of jurisdiction over Ashley but did not respond to the Department's mootness argument in his reply brief.

The second issue involves the remaining three children. On May 20, 2021, the juvenile court granted sole legal and physical custody to the mother, gave the father unmonitored visitation, and terminated jurisdiction over the three children. The Department sent us a letter on July 9, 2021, and attached the May 2021 orders.

An appeal may become moot when an event makes it impossible for us to grant effective relief. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054.) Generally, an order

8

terminating the juvenile court's jurisdiction renders an appeal from a previous order in a dependency proceeding moot. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) We decide whether to dismiss an appeal for mootness on a case-by-case basis. (*Ibid.*) We may exercise our discretion to reach the merits of a challenge to a jurisdictional finding if the finding could have other consequences beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763; *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [dismissal does not preclude review of a significant basis for jurisdiction where the court's exercise of jurisdiction has resulted in orders that continue to affect the parent adversely].)

As to Ashley, the case is moot. The father had the opportunity to disagree with the Department's assertion the case was moot for Ashley in his reply brief. He did not. He forfeited this issue.

One of the father's other contentions is moot as well. He challenges the written order giving him monitored visits with Ashley and Jennifer because the court's oral pronouncement allowed unmonitored visits. The May 2021 order gives him unmonitored visits. The November 2020 order does not continue to affect him adversely and the issue is moot.

We will not treat the father's remaining contentions as moot. The Supreme Court recently granted review of an unpublished case in which the Court of Appeal dismissed an appeal because the juvenile court had terminated jurisdiction. (*In re D.P.* (Feb. 10, 2021, B301135) [nonpub. opn.], review granted May 26, 2021, S267429.) To avoid an opinion conflicting with the Supreme Court's decision in this pending case, and because the juvenile court's orders giving sole custody to the mother and limiting the father's visitation at least arguably

continue to affect the father adversely, we address the merits of the father's remaining contentions concerning Jennifer, Carlos, and David.

III

The court's orders were proper.

A

We review jurisdictional orders for substantial evidence. Under this standard, we examine the record in a light most favorable to the juvenile court's determinations. We draw all reasonable inferences in favor of the findings and orders of the juvenile court. We do not reweigh the evidence or reassess credibility. (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).)

Under section 300, subdivision (b)(1), the court may exercise jurisdiction when a child has suffered or there is a substantial risk the child will suffer serious physical harm or illness because of the parent's failure to supervise or protect the child. The standard of proof is preponderance of the evidence. (§ 355, subd. (a).)

If the juvenile court sustains multiple bases of jurisdiction, we may affirm as long as substantial evidence supports one basis for jurisdiction. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Sufficient evidence supports the court's jurisdictional finding under section 300, subdivision (b)(1). The evidence demonstrates the father used inappropriate physical discipline against Carlos and Jennifer. He pinned Carlos to a bed, choked him, and struck Carlos's face twice, causing bleeding. Rather than acknowledge this was inappropriate, the father said he would do it again. The father pulled Jennifer's hair, dragged her, and hit her. He claimed he was trying to deescalate the situation

10

and blamed Jennifer.  Jennifer said this was not a one-time incident:  the father had kicked her in the stomach, dragged her, and hit her at least once before.  Rather than take responsibility, the father blamed Carlos and Jennifer.  He said neither the law nor the Department could tell him how to act.  The father's conduct was serious, he blamed the children, and he planned to continue in the future.  This put all his children at risk of serious physical harm.

The father says the court's jurisdiction orders were improper because they were based on a single incident involving Carlos and a single incident involving Jennifer.  He contends there was no pattern of abuse.  This argument fails.  There were two major incidents.  Furthermore, Jennifer offered testimony about at least one other incident.  The court correctly interpreted the father's actions as part of a larger pattern.

The father compares this case to *In re Isabella F.* (2014) 226 Cal.App.4th 128 (*Isabella*) but that case is inapposite.  In *Isabella*, the court found insufficient evidence supported jurisdiction under section 300, subdivision (a) where a mother had a single altercation with her nine-year-old daughter.  (*Id.* at pp. 131–132 & 138–139.)  Isabella said the mother hit her in the face, grabbed her by the neck, and locked her in the bathroom.  (*Id.* at pp. 131–132.)  Isabella had fingernail scratches on her face and a small cut on her cheekbone.  (*Ibid.*)

The mother started anger management classes, participated in weekly individual therapy, and voluntarily sought resources.  (*Isabella*, *supra*, 226 Cal.App.4th at p. 134.)  The mother did not blame Isabella and took responsibility for the incident.  (*Id.* at p. 135.)  The mother also acknowledged she did

11

not handle the situation well and she acknowledged she needed help managing her emotions.  (*Ibid*.)

The father's case does not involve a single incident, a parent who took responsibility, or a parent who sees the need to change.

The father also cites *Gonzalez v. Santa Clara County Department of Social Services* (2014) 223 Cal.App.4th 72 and says his conduct against Jennifer had a proper disciplinary motive.  There must be a reasonable occasion for discipline and the disciplinary measure must be reasonable in kind and degree.  (*Id.* at pp. 86–87.)  The juvenile court properly found the father's actions against Jennifer were unreasonable and excessive.

The court properly sustained jurisdiction.

### B

The disposition order was appropriate.

To remove a child from parental custody, the court must make one of five findings by clear and convincing evidence. (§ 361, subd. (c).)  One ground is substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if the child returns home, and there are no reasonable means to protect the child without removing the child from the parent's physical custody.  (§ 361, subd. (c)(1).)

We again follow the substantial evidence standard of review (*R.T.*, *supra*, 3 Cal.5th at p. 633), but we account for the high probability the clear and convincing standard of proof demands.  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1009, 1011.)

The same facts supporting jurisdiction support the removal order.  The father engaged in inappropriate physical discipline and he expressed a commitment to using this discipline.  The

12

court properly found there were no reasonable means to protect the children absent removal.  The father said the Department could not tell him what to do.  When the mother told the father to stop after he hit Carlos once, the father did not listen and he said Carlos was not going to disrespect him.  These facts show alternatives such as in-home services or joint custody with supervision would not have ensured the children's safety.

The removal order was proper.

**DISPOSITION**

We affirm.


WILEY, J.


We concur:



GRIMES, Acting P. J.



STRATTON, J.